THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> ROSALINDA HERRERA HEREDIA, *et al.* <br><br> Defendants. | CASE NO. C24-0917-JCC <br><br> ORDER |

This matter comes before the Court on Defendant VIP International Real Estate Group, Inc's ("VIP") motion to dismiss itself from this action (Dkt. No. 29). Having thoroughly considered the briefing and the relevant record, the Court hereby DENIES the motion for the reasons explained herein.

I.   **BACKGROUND**

   A.   **The Underlying Lawsuit**

This is an insurance coverage dispute between Plaintiff Continental Casualty Company ("Continental") and VIP. Continental seeks a judicial determination that it does not owe defense or indemnity coverage to VIP with respect to a lawsuit pending in King County Superior Court, for which VIP is (or at least was) a named defendant. (Dkt. No. 3 at 2.) That lawsuit is titled *Rosalinda Herrera Heredia, et. al. v. Quang Vuong and Ha Tu Huynh, et al.*, King County

1  Superior Court, No. 22-2-02836-0-KNT[1] (hereinafter the "Underlying Lawsuit"). (*See generally*
2  Dkt. Nos. 39-1, 39-2.)
3        According to Continental, the Underlying Lawsuit involves a fire that started in
4  December 2021 outside of an apartment building in Renton, Washington (hereinafter the
5  "Apartment"). (Dkt. No. 3 at 4–5.) The fire quickly engulfed the entire building. (*Id*. at 5.) In
6  February 2022, the tenants of the Apartment, who are also named defendants in this action (but
7  hereinafter referred to as "Underlying Plaintiffs"), filed the Underlying Lawsuit. (*Id*.) In it, they
8  named as defendants the following: VIP, Kimberly Vuong, the owners of the Apartment, and
9  other individuals seemingly managing the Apartment (hereinafter the "Underlying Defendants").
10  (*See id*.) The Underlying Plaintiffs alleged that the Underlying Defendants were negligent in
11  failing to keep the Apartment free of dangerous conditions, which caused the fire and resulted in
12  the Underlying Plaintiffs' physical injury, property damage, and emotional damage. (*Id*.) At the
13  time, VIP maintained an insurance policy with Continental (hereinafter the "Policy") for claims
14  and liability arising out of VIP's provision of professional real estate services. (*Id*. at 6.)
15        Continental alleges that on April 8, 2022, VIP's counsel tendered the Underlying Lawsuit
16  to Continental. (*Id*. at 9.) Ten days later, Continental acknowledged receipt and requested that
17  VIP provide a copy of the complaint. (*Id*. at 10.) VIP did not respond. (*Id*.) On May 23, 2022,
18  Continental again requested a copy of the complaint to determine coverage. (*Id*.) This time, VIP
19  provided the complaint and its answer. (*Id*.) That same day, Continental requested a copy of the
20  "property management agreement" applicable to VIP and the claim. (*Id*.) Again, VIP did not
21  respond. (*Id*.) Instead, Continental alleges that on December 30, 2022, VIP merely wrote to
22  Continental asserting that Continental was obligated to defend and indemnify VIP and demanded

---

[1] According to the parties' briefings, the Underlying Lawsuit was originally filed under case number 21-2-08644-2-KNT. (*See* Dkt. Nos. 3 at 2, 29 at 3.) However, Continental's submissions from the Underlying Lawsuit demonstrate that the case number is now 22-2-02836-0-KNT. (*See generally* Dkt. Nos. 39-1, 39-2.) And, as further described below, the Court takes judicial notice of portions of these submissions, *see infra* Section II.A. The Court therefore refers to the latter case number.

that Continental confirm tender. (*Id*. at 15.)

### B.  VIP is Not Involved with the Apartment

Notably missing from the December 30th letter was its recognition that VIP *had no involvement whatsoever* with the Apartment. (Dkt. No. 39-1 at 19.) In fact, throughout the course of the Underlying Lawsuit, but certainly no later than August 30, 2022, it became clear that VIP was *not* the Apartment's property manager. (*See id*.) VIP's own interrogatory responses stated as much. (*See id*.) And, as it turned out, the Underlying Plaintiffs had only named VIP as a defendant because VIP was a real estate company owned by Kimberly Vuong, and Kimberly Vuong had acted as the Apartment's *informal* property manager. (*Id*. at 4, 19.) After realizing the discrepancy, the Underlying Plaintiffs moved to nonsuit VIP as a party to the Underlying Lawsuit. (*Id*. at 19.) Yet VIP's December 30th letter failed to mention this motion, as well as the fact that it was unopposed. (Dkt. No. 3 at 15–16.)

As such, on January 4, 2023, Continental sent a reservation of rights ("ROR") letter to VIP, which stated in relevant part: "***Based on the information you have provided*** . . . ***We understand VIP International was the property management company for the complex at the time of the incident.***" (*Id*. at 16) (emphasis in original). Of course, Continental's understanding was mistaken, and VIP *knew* it was mistaken. (Dkt. No. 39-1 at 19.) Yet VIP did not attempt to correct it. (*Id*.)

### C.  The Underlying Parties Commence Settlement Discussions

Continental alleges that in January 2023, VIP's counsel initiated settlement discussions. (Dkt. No. 3 at 17.) Continental further alleges that on February 2, 2023, VIP's counsel e-mailed the Underlying Plaintiffs' counsel with a summary of insurance coverage, which included, for the first time, the Policy's limits of $1,000,000. (*Id*. at 18.) Then, on February 10, 2023, following a phone call between VIP's counsel and the Underlying Plaintiffs' counsel (together, the "Underlying Parties"), the Underlying Plaintiffs curiously withdrew their then-pending motion to nonsuit VIP. (*Id*.)

ORDER
C24-0917-JCC
PAGE - 3

On June 8, 2023, the Underlying Parties conducted a mediation, where they came up with a plan for a covenant judgment. (*Id*. at 19.) Continental did not attend this mediation. (*Id*.) At 2:44 p.m. that day, VIP's counsel e-mailed Continental, demanding immediate tender of the $1,000,000 policy limit and gave Continental until 3:00 p.m. to respond. (Dkt. No. 39-1 at 19.) In other words, Continental had only 16 minutes to respond. (*Id*.) Understandably, Continental did not respond. (*Id*.) Nevertheless, the Underlying Parties continued to negotiate the specifics and ultimately reached a covenant judgment settlement. (*Id*. at 20.) The covenant judgment included $11,000,000 to be entered against VIP as a judgment debtor, despite VIP's lack of involvement with the Apartment. (*Id*.) VIP also assigned any rights and claims it had under the Policy to the Underlying Plaintiffs. (Dkt. No. 3 at 20.)

The Underlying Parties allegedly signed the settlement agreement in or around December 2023. (*Id*.) But Continental was not provided notice of the agreement or covenant judgment until late May 2024, when the Underlying Plaintiffs filed a motion for approval of the settlement pursuant to RCW 4.22.060(1) and served Continental with a copy of the motion. (*Id*.)

D.  **The Instant Action and the Status of the Underlying Lawsuit**

On August 23, 2024, Continental filed its amended complaint in this action. (Dkt. No. 3.) In it, Continental seeks a judicial declaration (1) that it does not owe any defense or indemnity obligations to VIP or the Underlying Plaintiffs for any of the claims asserted in the Underlying Lawsuit (Count I), and (2) that the Policy is null and void due to VIP's intentional misrepresentations (Count II). (*See* Dkt. No. 3 at 21–23.) Meanwhile, on December 13, 2024, the Honorable Nelson K. H. Lee, King County Superior Court Judge, rejected the Underlying Plaintiffs' petition for an order finding the settlement reasonable and, instead, deemed the entire settlement and covenant judgment unreasonable. (*See generally* Dkt. Nos. 39-1, 39-2.) As such, the Underlying Lawsuit remains pending.

## II.  DISCUSSION

### A.  Judicial Notice

As a threshold matter, Continental asks the Court to "take judicial notice of the Underlying Lawsuit," including Judge Lee's Findings of Fact and Conclusions of Law (Dkt. No. 39-1) and accompanying Order (Dkt. No. 39-2). (Dkt. No. 38 at 8 n. 1.)

A court may take judicial notice of facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). That is, a court may take judicial notice of (1) undisputed matters of public record, *see Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001); and (2) "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue," *U.S. v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). As such, court orders, pleadings, memoranda, and other filings are proper subjects of judicial notice. *See id*.; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) and *Rutherford v. Cent. Bank of Kansas City*, 2024 WL 4765254, slip op. at 3, (W.D. Wash. 2024) (both taking judicial notice of various court filings).

There is no doubt that the Underlying Lawsuit is directly related to the matters at issue here. Nevertheless, Continental's request that the Court generally "take judicial notice of the Underlying Lawsuit" is unduly expansive. (Dkt. No. 40-1 n.1.) As noted, a court may take judicial notice of *undisputed* matters of public record. *Lee*, 250 F.3d at 689. The Court has yet to see an example where a court took judicial notice of an entire case, rather than of the existence of specific filings and undisputed facts contained therein. To take judicial notice of an entire case—whatever that may entail—would likely lead the Court to accept as fact matters that are still subject to dispute. *See id*. at 690 (district court had properly taken judicial notice of undisputed facts yet also improperly took notice of disputed ones, both of which were matters of public record). The Court therefore DECLINES to "take judicial notice of the Underlying Lawsuit."

However, the Court GRANTS Continental's request as to portions of Judge Lee's Findings of Fact and Conclusions of Law Denying Approval of Covenant Settlement (Dkt. No.

39-1) and Order Denying Plaintiffs' Petition for Order Finding Settlement Reasonable (Dkt. No. 39-2). Specifically, the Court takes judicial notice of Judge Lee's undisputed factual findings, (*see* Dkt. No. 39-1 at 19–20) and his conclusions of law, (*see id*. at 15–21).[2] In particular, the Court takes notice of the fact that Judge Lee deemed the entire covenant judgment settlement—including the provision assigning VIP's rights and claims under the Policy to the Underlying Plaintiffs—to be unreasonable. (*Id*. at 15, 20; *see also* Dkt. No 39-2 at 3) (finding settlement and covenant judgment unreasonable in their entirety and thus denying the petition for an order finding the settlement reasonable). The Court also places particular emphasis on Judge Lee's finding that VIP's behavior leading up to the purported covenant judgment settlement "strongly suggest[ed] . . . collusive dealing." (Dkt. No. 39-1 at 20.) It is against this backdrop that the Court issues the below rulings.

      **B.**      **Legal Standard for Motion to Dismiss**

Dismissal is proper when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim is facially plausible when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. As such, a plaintiff must provide grounds for their entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). However, when considering a motion to dismiss, the Court accepts factual allegations pled in the complaint as true and construes them in the light most favorable to the plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021).

---

[2] And, to that end, the Court DENIES VIP's request to strike Continental's references to the aforementioned materials. (*See* Dkt. No. 44 at 2.)

ORDER
C24-0917-JCC
PAGE - 6

**C.      Validity of VIP's Assignment of Rights to the Underlying Plaintiffs**

VIP first argues that Continental fails to state a legally cognizable claim against it because the requested relief simply does not implicate VIP. (*See* Dkt. No. 29 at 8.) That is, VIP argues that under the covenant judgment settlement, any rights to defense or indemnity as provided in the Policy have been assigned to the Underlying Plaintiffs. (*Id.*) Yet given the Court's taking of judicial notice,[3] this argument is easily refuted. To its credit, VIP moved to dismiss itself from this action prior to Judge Lee's reasonableness determination. Nevertheless, Judge Lee has since deemed the entire covenant judgment settlement—including the assignment provision—to be unreasonable. (*See generally* Dkt. Nos. 39-1, 39-2.) VIP's purported assignment therefore has no legally binding effect. In turn, Continental's declaratory judgment action directly implicates VIP and thus states a legally cognizable claim against VIP.

**D.      Sufficiency of Continental's Declaratory Judgment Claims**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Congress created this remedy, in part, to allow [a] potential [party] to file preemptive litigation to determine whether they have any legal obligation[] to their potential adversar[y]." *Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) (citing *Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996)). In the insurance context, insurers "may sue for a declaratory judgment before they undertake a defense, to determine their liability." *Globe Indem. Co. v. First Am. State Bank*, 720 F. Supp. 853, 858 (W.D. Wash. 1989), *aff'd*, 904 F.2d 710 (9th Cir. 1990) (quoting *Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133, 1139 (Wash. 1986)). The Court then has discretion to grant or deny declaratory relief. *Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 852 (9th Cir. 2011). However, where "the critical issue for purposes of coverage

---

[3] *See supra* Section II.A.

will not be decided in the [underlying] tort action, . . . it is an abuse of discretion for a District Court to dismiss declaratory judgment actions brought by insurance carriers." *Globe Indem. Co.*, 720 F. Supp. at 858 (citations omitted).[4]

VIP puts forth a host of reasons for why Continental fails to state its claims. Most of them misconstrue the standard at the motion to dismiss stage.[5] None are convincing.

1. Count I

With respect to Count I, VIP argues that dismissal is proper because Continental fails to establish what provision of the Policy precludes it from defending and/or indemnifying VIP in the Underlying Lawsuit. (Dkt. No. 29 at 10.) But Continental need not *establish* that it is precluded from providing coverage. It need only *plead* that such is the case. And it has done so here. Indeed, Continental alleges that it is only required to defend or indemnify claims that arise out of the "rendering of professional real estate services by the insured." (Dkt. No. 3 at 6–8.) Continental then alleges that VIP was not the Apartment's property manager (in fact, Continental alleges that VIP had no relationship whatsoever with the Apartment), and thus could not have rendered any "professional real estate services" that would give rise to coverage under the Policy. (*See id*. at 11–14.) Continental has therefore sufficiently pled that it does not owe defense or indemnity coverage to VIP.

2. Count II

With respect to Count II, VIP makes a series of convoluted arguments for why dismissal is proper. It contends (1) that the provision upon which Continental's voidance claim relies applies only to an intentional misrepresentation in the Policy's application process rather than a misrepresentation post-dating the Policy's issuance (as Continental alleges), (*see* Dkt. No. 29 at 11–13); (2) that none of Continental's alleged misrepresentations are material, (*see id*. at 13–16); (3) that the Policy is merely "voidable," not void, and thus Continental failed to comply with

---

[4] So far neither party disputes that the issue of coverage will not be decided in the Underlying Lawsuit.

[5] That is, they improperly test the merits of the claims rather than their sufficiency as pled.

certain notice requirements and other conditions precedent in the Policy prior to attempting to "void" it, (*see id*. at 16–18); and (4) that Continental fails to meet the heightened pleading standard for intentional misrepresentation, (*see id*. at 17–18). The first three arguments require the Court to reach the merits of the case rather than simply test the sufficiency of the complaint. As this is a motion to dismiss based on a failure to state a claim, the Court need not entertain such arguments. *See, e.g., Crum & Forster Specialty Ins. Co. v. Sierra Pac. Indus., Inc.*, 2023 WL 5716885, slip op. at 3 (W.D. Wash. 2023) (denying motion to dismiss declaratory judgment action where the defendant's arguments tested the legal merits of the claims rather than the sufficiency of the complaint).

However, the Court may properly consider VIP's fourth argument: that Continental fails to meet the heightened pleading standard for fraud. A claim of intentional misrepresentation is a claim of fraud, *see W. Coast, Inc., v. Snohomish Cnty.*, 48 P.3d 997, 1000 (Wash. Ct. App. 2002), and thus is subject to Rule 9's particularity standard, *see* Fed. R. Civ. P. 9(b). To meet this standard, the complaint must state "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

Under Washington law, fraud requires: "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff." *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996). Continental alleges the following pertinent facts: VIP's counsel mailed Continental a letter purportedly tendering the Underlying Lawsuit. (Dkt. No. 3 at 9.) In so "tendering," VIP failed to disclose to Continental that it did not perform any property management services for the Apartment, despite

Continental's repeated requests for confirmation. (*Id*. at 10–11.) Hearing nothing from VIP, Continental sent a ROR letter stating, in particular, that it relied "on the information you have provided," including an "understand[ing that] VIP International was the property management company for the complex at the time of the incident." (*Id*. at 16.) VIP acknowledged receipt of the ROR letter yet never notified Continental that its understanding was incorrect. (*Id*. at 16–17.) This was a material omission. (*Id*. at 22.) VIP then used its $1,000,000 Policy limit as leverage for settlement. (*See id*. at 18.) Together, these allegations satisfy all but the damages element.

As for damages, the Court observes that a declaratory judgment action is specifically intended to prevent "avoidable damages from being incurred by a person uncertain of his rights and threatened with damage by delayed adjudication." *Brooks Mfg. Co. v. Dis-Tran Wood Prods.*, LLC, 2012 WL 1099760, slip op. at 4 (W.D. Wash. 2012) (internal quotations omitted). As such, Continental essentially seeks to avoid any damages through a judicial determination that it does not owe *anything* (defense, indemnity, or otherwise) to VIP. (*See id*. at 23.) This is sufficient for purposes of a declaratory judgment claim. *See Multiscan Tech. USA, LLC v. Cohn*, 2024 WL 4839359, slip op. at 8 (W.D. Wash. 2024) ("A declaratory judgment claim is generally proper where it rests upon, and will be determinative in resolving an underlying cause of action involving claims for damages." (citations omitted)).

Finally, Continental alleges that VIP's intentional misrepresentations resulted in its breach of various terms of the Policy, including the Assistance and Cooperation Clause and the Entire Contract Clause. (Dkt. No. 3 at 22.) Continental thus has sufficiently pled Count II—that VIP breached the Policy through its intentional misrepresentations, which rendered the Policy null and void.

E.   **Applicability of Federal Rules of Civil Procedure 15, 19, and 21**

Aside from failure to state a claim, VIP also argues that dismissal is proper because Continental failed to request the Court's leave to add VIP as a party. (Dkt. No. 29 at 18.) In response, Continental contends that Rule 15 applies in this scenario, and that it amended its

complaint as of right pursuant to Rule 15(a). (Dkt. No. 40-1 at 28.) Both parties miss the mark.

VIP ostensibly moves to dismiss itself from this action as an improper party under Rule 21. (Dkt. No. 29 at 18) (citing Federal Rule of Civil Procedure 21). It argues that Rule 21, which governs misjoinder, requires parties to seek the court's leave to add a party—which Continental did not do here. (Dkt. No. 29 at 18.) But Rule 21 does not state such a requirement. *See* Fed. R. Civ. P. 21 (lacking such language). Moreover, federal courts have only ever applied Rule 21 to improper *permissive* joinders, not *required* joinders. *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 944 (D. Or. 2020) ("'federal courts have uniformly held that misjoinder [under Rule 21] occurs when a single party or multiple parties fail to satisfy the conditions for permissive joinder set forth in [Rule 20].'" (citation omitted)). Here, "[d]eclaratory relief would be incomplete without both the insurer and the insured." *Burns v. Scottsdale Ins. Co.*, 2009 WL 86549, slip op. at 1 (W.D. Wash. 2009). VIP, as the insured, is thus a required party under Rule 19. *See* Fed. R. Civ. P. 19(a)(1). And as such, this is not a permissive joinder, so Rule 21 simply does not apply.[6] The Court therefore DENIES VIP's request to dismiss itself as a party.[7]

### III.   CONCLUSION

For the foregoing reasons, the Court DENIES VIP's motion to dismiss (Dkt. No. 29).

//

---

[6] Even if this were a permissive joinder, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Moreover, district courts have broad discretion under Rule 21 to dismiss an improper party, and the Court declines to exercise that discretion here for the reasons stated. *See U.S. v. Testa*, 548 F.2d 847, 856 (9th Cir. 1977).

[7] As for Continental's argument that Rule 15 (and not Rule 21) applies in this scenario, this argument is certainly closer to the mark, but still misses it slightly. Rule 15 allows a party to amend its pleading without seeking the court's leave no later than 21 days after serving it, or, if the pleading is one to which a responsive pleading is required, no later than 21 days after service of the responsive pleading or Rule 12 motion. Fed. R. Civ. P. 15(a)(1)(A)–(B). Yet here, neither of the aforementioned conditions apply. Indeed, no defendant had even been served, let alone appeared or filed a responsive pleading, when Continental amended its complaint. (*See* Dkt. No. 40-1 at 29; *see also generally* Dkt. Nos. 1–5) (initial summons and service of process was not issued until *after* Continental amended its complaint). In other words, Rule 15's governance had not even been triggered when Continental amended its complaint to add VIP as a party. Thus, just as with Rule 21, Rule 15 simply does not apply.

1    DATED this 21st day of January 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C24-0917-JCC
PAGE - 12