THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CONTINENTAL CASUALTY COMPANY,

                 Plaintiff,

    v.

ROSALINDA HERRERA HEREDIA, *et al.*

                 Defendants.

CASE NO. C24-0917-JCC

ORDER

      This matter comes before the Court on Plaintiff Continental Casualty Company's ("Continental") motion for summary judgment (Dkt. No. 52) and Defendant VIP International Real Estate Group, Inc.'s ("VIP") related motion to seal (Dkt. No. 62). Having thoroughly considered the briefing and the relevant record, the Court DENIES the motion to seal (Dkt. No. 62) as moot, finds oral argument unnecessary,[1] and hereby GRANTS in part and DENIES in part the motion for summary judgment (Dkt. No. 52) for the reasons explained herein.[2]

---

[1] Defendant VIP requested oral argument on its response to Continental's motion for summary judgment. (Dkt. No. 75 at 1.) The Court deems such argument unnecessary because the parties have had a full opportunity to brief the motion. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (oral argument not required if parties are given adequate opportunity to submit papers in support of and/or opposition to the motion).
[2] The Court also addresses other pending motions (Dkt. Nos. 82, 85) at the conclusion of this Order. *See infra* Section III.

I.    **BACKGROUND**

This is an insurance dispute largely between Continental and VIP. Continental seeks a judicial determination that the insurance policy it issued to VIP is null and void and that it therefore does not owe defense or indemnity coverage to VIP with respect to a lawsuit pending in King County Superior Court, for which VIP remains a named defendant. (Dkt. No. 3 at 21–23.) That lawsuit is titled *Rosalinda Herrera Heredia, et. al. v. Quang Vuong and Ha Tu Huynh, et al.*, King County Superior Court, No. 22-2-02836-0-KNT (hereinafter the "Underlying Lawsuit"). (Dkt. No. 30-2 at 2.)

A.    **The Underlying Lawsuit**

The Underlying Lawsuit involves a fire that broke out on December 27, 2021, outside of a two-story apartment complex in Renton, Washington (hereinafter the "Apartment"). (Dkt. Nos. 52 at 6, 75 at 2.) On February 25, 2022, the Apartment's tenants, who are also named as defendants in this action (but hereinafter referred to as "Underlying Plaintiffs"), filed the Underlying Lawsuit. (*Id*.) In it, they named as defendants the following: the Apartment's owners, VIP, Kimberly Vuong[3] ("Ms. Vuong"), and other individuals seemingly involved with the Apartment's management (hereinafter the "Underlying Defendants").[4] (*See id*.) Amongst other things, the Underlying Plaintiffs alleged that the Underlying Defendants were negligent in failing to keep the Apartment free of dangerous conditions, that the Underlying Plaintiffs had complained several times regarding unsafe conditions at the Apartment, and that they jumped through windows to escape fire—all of which resulted in physical injury, property damage, and emotional damage. (Dkt. No. 30-2 at 6–9.)

B.    **The Underlying Claim**

At the time of the fire, VIP maintained an insurance policy with Continental (hereinafter

---

[3] The owner and Vice President of VIP as well as the Apartment's owners' daughter-in-law. (Dkt. No. 70 at 2.)

[4] The Court hereinafter refers to the Underlying Plaintiffs and Underlying Defendants, together, as the "Underlying Parties."

the "Policy") for claims and liability arising out of VIP's provision of professional real estate services. (Dkt. No. 3-1.) On April 8, 2022, VIP's counsel tendered the Underlying Lawsuit to Continental (hereinafter the "Underlying Claim"). (Dkt. Nos. 53-3 at 2, 73 at 3.) Ten days later, Continental acknowledged receipt and requested that VIP provide a copy of the underlying complaint. (Dkt. No. 53-5 at 2.) After about a month without a response, on May 23, 2022, Continental again asked VIP for a copy of the underlying complaint "and any other substantive documents" to determine coverage. (Dkt. No. 53-6 at 4.) This time, VIP responded with the complaint and its answer but nothing more. (*Id*. at 4) That same day, Continental requested a copy of the "property management agreement" applicable to VIP and the claim. (*Id*. at 3.) Again, VIP did not respond. (*See id*. at 2–3.) Instead, nearly two months later, VIP provided only the information for a general liability claim between the Apartment's owners and their insurance company, yet still no property management agreement. (*See id*. at 2.)

Nevertheless, VIP insisted that Continental accept the Underlying Claim. On December 30, 2022, VIP sent a letter asserting that Continental was "obligated to defend and indemnify [VIP] in this lawsuit" and "requesting that [Continental] immediately confirm, in writing, its acceptance of our client's/your insured's tender of defense and indemnity." (Dkt. No. 53-9 at 2.) On January 3, 2023, VIP sent yet another letter seeking a written response within 15 days from Continental. (Dkt. No. 53-11 at 2.)

Continental then accepted coverage under a reservation of rights letter ("ROR Letter"), despite *still* not having received a property management agreement between VIP and the Apartment. (Dkt. No. 53-12 at 2.) In so doing, Continental explicitly asked VIP for "periodic updates on the status of this matter, as well as copies of significant correspondence, documents and court filings." (*Id*. at 5.) It also stated that it "underst[ood] VIP International was the property management company for the complex at the time of the incident." (*Id*. at 3.) VIP did not comment on this understanding nor address the missing property management agreement; however, it did begin producing other documents to Continental per the ROR Letter. (Dkt. Nos.

53-13 at 2–5, 73 at 3.)

### C.    VIP Represents it has No Relationship with the Apartment

Curiously missing from VIP's communications with Continental was VIP's representations in the Underlying Lawsuit that it *had no involvement whatsoever* with the Apartment. Indeed, throughout the course of the Underlying Lawsuit but certainly no later than August 30, 2022, VIP asserted that it "ha[d] no relationship with the [Apartment.]" (Dkt. No. 53-7 at 4, 9) (VIP's August 30, 2022, interrogatory responses in the Underlying Lawsuit). Even in the instant litigation, VIP continues to represent that it "ha[s] nothing to do with the Apartment Complex." (Dkt. No. 70 at 2) (Ms. Vuong's declaration in support of VIP's response to the motion for summary judgment).

Thus, on September 13, 2022, the Underlying Plaintiffs moved to nonsuit VIP as a party. (*See* Dkt. Nos. 52 at 9, 60 at 4, 75 at 4) (*see also* Dkt. No. 53-8) ("Nonsuit motion"). However, at VIP's urging, the Underlying Plaintiffs subsequently withdrew their Nonsuit motion on February 10, 2023—that is, over a month *after* Continental accepted coverage. (*See* Dkt. Nos. 53-17, 53-18, 60 at 5.) VIP therefore remained a party in the Underlying Lawsuit. (*See id.*) Yet it never informed Continental of these developments. (*See* Dkt. No. 52 at 21.)

### D.    The Underlying Parties Execute a Covenant Judgment Settlement

The Underlying Parties mediated a settlement on June 8, 2023. (Dkt. Nos. 52 at 13, 75 at 6.) Continental did not attend. (*Id.*) The Underlying Parties agreed that an $11,000,000 covenant judgment would be entered against the Underlying Defendants but that the Underlying Plaintiffs would not execute on that judgment; instead, the Underlying Plaintiffs would receive assignment of VIP's purported bad faith claim against Continental. (Dkt. No. 53 at 15; 53-24 at 7.) Thereafter, the Underlying Plaintiffs moved in the Underlying Lawsuit for approval of the settlement as reasonable. (Dkt. Nos. 52 at 15, 60 at 8, 75 at 7.) Unbeknownst to the Underlying Plaintiffs, though, VIP omitted critical information during the negotiations—information that would have prevented the Underlying Plaintiffs from agreeing to the settlement to begin with.

1   (*See* Dkt. Nos. 60 at 6, 61-1 at 7.)

2       **E.     The Instant Action and the Status of the Underlying Lawsuit**

3       On August 23, 2024, Continental filed its amended complaint in this action, naming as

4   defendants both VIP and the Underlying Plaintiffs. (Dkt. No. 3.) The Underlying Plaintiffs

5   answered with their own set of counterclaims. (Dkt. No. 28 at 29–38.) On November 18, 2024,

6   VIP moved to dismiss itself from the instant action, arguing, amongst other issues, that because it

7   assigned its bad faith claims to the Underlying Plaintiffs, Continental's requested relief simply

8   did not implicate VIP. (*See* Dkt. Nos. 29 at 1, 48 at 7.) Around the same time, the Honorable

9   Nelson K. H. Lee, King County Superior Court Judge, rejected the Underlying Plaintiffs'

10  petition for an order finding the settlement reasonable and, instead, deemed the entire settlement

11  and covenant judgment unreasonable. (*See generally* Dkt. Nos. 39-1, 39-2) (Judge Lee's findings

12  of facts, conclusions of law, and order denying the reasonableness petition, all issued on

13  December 13, 2024). As such, this Court denied VIP's motion to dismiss itself and, in so doing,

14  echoed Judge Lee's concern about possible collusive dealing. (*See* Dkt. No. 48 at 1, 6) (quoting

15  Dkt. No. 39-1 at 20). Thereafter, VIP filed an answer in this matter, which also contained a set of

16  counterclaims. (Dkt. No. 49 at 19–24.)

17      Continental now moves for summary judgment on all of its claims and dismissal of VIP's

18  and the Underlying Plaintiffs' counterclaims. (Dkt. No. 52 at 1.) VIP opposes.[5] (*See generally*

19  Dkt. No. 75.) The Underlying Plaintiffs agree to dismissal of their counterclaims but argue that it

20  should be without prejudice. (Dkt. No. 60 at 21.)

21  //

22  //

23

24  _____

[5] VIP also appears to cross-move for summary judgment on its bad faith counterclaim against
25  Continental. (*See* Dkt. No. 75 at 28–30.) However, filing a motion or seeking affirmative relief in
a response brief is procedurally improper. *See* LCR 7(b)(1), (k); *see also Meghinasso v.*
26  *Mercedes-Benz USA*, 2022 WL 226078, slip op. at 1 (W.D. Wash. 2022). The Court therefore
treats VIP's "cross-motion" as nothing more than arguments in opposition to Continental's
motion for summary judgment on VIP's counterclaims.

## II.      DISCUSSION

### A.      VIP's Requests to Strike

As a threshold matter, VIP asks the Court to strike various portions of Continental's motion for summary judgment, reply brief, and evidence cited thereto. (*See* Dkt. Nos. 75 at 2; 79 at 2.) As explained below, the Court is unconvinced by VIP's reasoning and therefore DENIES these requests.

With respect to portions of Continental's motion for summary judgment and evidence cited thereto, VIP merely objects under "802" without elaboration. (Dkt. No. 75 at 2.) As such, the Court is "reduced to guessing at the arguments" underlying the objections. *Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021). To that end, because Rule 802 generally prohibits the admission of hearsay, the Court presumes that VIP objects on the grounds that the objected-to evidence consists of out-of-court statements being offered for their truth. *See* Fed. R. Evid. 801(c), 802. However, at the summary judgment stage, the Court need only focus on the admissibility of the evidence's *contents*, not its *form*. *See Sandoval*, 985 F.3d at 666. "If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." *Id*. (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003)). Here, the objected-to evidence either reflects the personal knowledge of individuals who could be called to testify at trial or will likely be admissible at trial as non-hearsay or under an exception to the hearsay rule. The Court may therefore consider such evidence at the summary judgment stage.

With respect to Continental's reply brief (Dkt. No. 77), VIP objects to Continental's attempt to incorporate argument by reference to its response brief filed in response to VIP's motion to dismiss (Dkt. Nos. 38, 29, respectively). (Dkt. No. 79 at 2) (moving to strike Dkt. No. 77 at 12 n.5, 13 lines 3 to 8). As VIP correctly submits, the Court may decline to consider any text that is not included within the proper word or page limits, including references to argument

made in other briefings. *See* LCR 7(e)(3), (e)(6); *see also Mooney v. Roller Bearing Company of America, Inc.*, 2022 WL 1014904, slip op. at 10 (W.D. Wash. 2022) (declining to consider the defendant's arguments and evidence in response to the plaintiff's motion for summary judgment where the defendant merely "incorporate[d] its Motion for Summary Judgment"). But the Local Rules do not *preclude* the Court from considering such extraneous text; indeed, the Court maintains wide discretion in whether to consider arguments made outside of the prescribed word or page limits. *See* LCR 7(e)(6). And in any event, regardless of whether the Court considers arguments incorporated by reference, the Court does not find the content so improper as to warrant striking it from the record.

Accordingly, the Court DENIES VIP's requests to strike (Dkt. Nos. 75 at 2; 79 at 2).

**B.    Continental's Motion for Summary Judgment**

1.    <u>Legal Standard</u>

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and resolves ambiguity in that party's favor, but it must not make credibility determinations or weigh evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986); *Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994). A fact is material if it "might affect the outcome of the suit," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). However, conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). In turn, summary judgment is appropriate against a party who "fails to make a showing

1    sufficient to establish the existence of an element essential to that party's case, and on which that

2    party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

3                    2.    <u>Continental's Declaratory Judgment Claims</u>

4                    *i.    Misapplication of the Void-for-Fraud Clause*

5            Continental asserts that it is entitled to summary judgment in its favor on Counts I and II[6]

6    because VIP made material and intentional misrepresentations, which by its own terms renders

7    the Policy null and void. (*See generally* Dkt. No. 52.) VIP maintains that it did not intentionally

8    misrepresent any material facts in submitting the Underlying Claim to Continental. (Dkt. No. 75

9    at 11–15, 18–20.) It further argues that the provision on which Continental relies does not apply

10   to the case at bar. (*Id*. at 15–18.) Though the evidence overwhelmingly supports the conclusion

11   that VIP did intentionally misrepresent material facts throughout the Underlying Claims process,

12   *see infra* Section II.B.3.ii, the Court nevertheless agrees with VIP that Continental has

13   misapplied its purported "void-for-fraud" clause.

14           "In the interests of discouraging insurance fraud, [Washington courts] have long upheld

15   policy provisions stating that misrepresentation, concealment, or fraud in the claims process will

16   void coverage." *Reverse Now VII, LLC v. Oregon Mutual Ins. Co.*, 341 F. Supp. 3d 1233, 1237

17   (W.D. Wash. 2018). That is, Washington courts typically uphold "void-for-fraud" provisions

18   "where the policy expressly states that an insured is not entitled to coverage if that insured

19   intentionally misrepresents or conceals a material fact regarding a claim and that such

20   misrepresentations will void the entire policy." *Ki Sin Kim v. Allstate, Ins. Co., Inc.*, 223 P.3d

21   1180, 1188 (Wash. Ct. App. 2009).

22           Nevertheless, whether a void-for-fraud clause applies to specific instances of intentional

23   and material misrepresentation requires the Court to engage in an exercise of insurance contract

24   _____

25   [6] In Count I, Continental seeks a judicial determination that Continental did not owe defense or indemnity coverage to VIP for the Underlying Claim. (Dkt. No. 3 at 21.) In Count II, Continental seeks a judicial determination that VIP intentionally misrepresented several material facts throughout Continental's investigation of the Underlying Claim, and that such intentional and material misrepresentations render the Policy null and void. (*Id*. at 21–23.)

26

interpretation.[7] *See Kleinsasser v. Progressive Direct Ins. Co.*, 2021 WL 1720951, slip op. at 3 (W.D. Wash. 2021) (interpreting void-for-fraud clause to determine whether it extended to intentional misrepresentations made during litigation). When interpreting insurance contracts, courts "construe insurance policies as a whole, giving each clause force and effect." *Ki Sin Kim*, 223 P.3d at 1188 (citations omitted). Similarly, courts "give the terms of a policy the 'fair, reasonable, and sensible construction' that the average person purchasing insurance would give the contract." *Id*. (citation omitted). Any ambiguities in an insurance policy are construed against the insurer. *Id*. "To find a clause ambiguous and thus construe the ambiguity against the drafter, the Court must conclude that the clause is fairly susceptible to two different interpretations, both of which are reasonable." *Kleinsasser*, 2021 WL 1720951, slip op. at 4 (cleaned up).

According to Continental, the Policy contains the following intentional misrepresentation provision: "the intentional misrepresentation of any material matter by the Insured or the Isured's [sic] agent will render this Policy null and void." (Dkt. No. 52 at 18–19) (citing Dkt. No. 3-1 at 21). Continental argues that this provision applies to any and all intentional misrepresentations, including those made during the claims process. (*See id*.) Perhaps so, if viewed in isolation. But this provision does not exist in isolation; rather, it is a sub-provision of the "Entire Contract" clause. (*See* Dkt. No. 3-1 at 21.) Indeed, the "Entire Contract" clause reads as follows:

> L. Entire Contract
>> By acceptance of this Policy the **Insured** agrees that:
>> 1. all of the information and statements provided to us by the Insured are true, accurate and complete and shall be deemed to constitute material representations made by the Insured;
>> 2. this Policy is issued in reliance upon the **Insured's** representations;
>> 3. this Policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Insured** to us (all of which are deemed to be incorporated herein) embody all of the agreements existing between the **Insured** and us and shall constitute the entire contract between the **Insured** and us; and
>> 4. the intentional misrepresentation of any material matter by the Insured

---

[7] In general, the "[i]nterpretation of insurance policies is a question of law." *Ki Sin Kim*, 223 P.3d at 1188 (citation omitted).

or the Isured's [sic] agent will render this Policy null and void.

(Dkt. No. 3-1 at 15, 21) (emphasis in original). As such, VIP contends that the intentional misrepresentation provision applies only to an insured's misrepresentations made in the insurance *application* process, not those made in the *claims* process. (*See* Dkt. No. 75 at 15–18.) And again, Continental vehemently opposes, arguing that the provision is unambiguous and that it applies to the intentional misrepresentation of *any* material matter, not just those made in the application process. (*See* Dkt. No. 77 at 11.)

     VIP's interpretation is reasonable in light of the Entire Contract clause as a whole. *See Ki Sin Kim*, 223 P.3d at 1188. For one, each of the clause's other provisions pertain to the insured's statements and information disclosed when *preparing* the Policy. (*See* Dkt. No. 3-1 at 15.) Moreover, the other provisions' language suggest that the Entire Contract clause is meant to serve as an integration clause, the purpose of which is to confirm that the Policy itself is the final and complete expression of the insurance agreement between the parties. *See* 25 Wash. Prac., *Contract Law and Practice* § 4:3 (3d ed. 2024). These observations, taken together, suggest that the Entire Contract clause applies only to the parties' obligations in *forming* the contract. And thus, at minimum, the intentional misrepresentation provision is fairly susceptible to both Continental's and VIP's interpretations, both of which are reasonable. *See Kleinsasser*, 2021 WL 1720951, slip op. at 4.

     If both interpretations are reasonable, then the provision is necessarily ambiguous[8] and

---

[8] Further of note, Continental's own case examples involve void-for-fraud clauses with far more explicit references to misrepresentations in the *claims* process. (*See* Dkt. No. 52 at 18–19); *see also, e.g., Reverse Now*, 341 F. Supp. 3d at 1237 ("This policy is void in any case of fraud by you as it relates to this policy at any time" including for "[a] claim under this policy"); *Johnson v. Safeco. Ins. Co. of America*, 316 P.3d 1054, 1062 (Wash. Ct. App. 2013) ("We provide coverage to no 'insureds' under this policy if, whether before or after a loss, an 'insured' has [intentionally misrepresented any material fact] relating to this claim"); *Kleinsasser*, 2021 WL 1720951, slip op. at 4 ("**We** may deny coverage for an accident or loss if **you** . . . concealed or misrepresented any material fact or circumstance . . . with the intent to deceive in connection with the presentation or settlement of a claim" (emphasis in original)). These examples further counsel a finding that the intentional misrepresentation provision in the case at bar is, at best, ambiguous in its applicability.

ORDER
C24-0917-JCC
PAGE - 10

must be construed against Continental. *See Ki Sin Kim*, 223 P.3d at 1188. Construing the intentional misrepresentation provision against Continental, the Court thus concludes that that provision does not apply to misrepresentations made in the claims process. As such, the Court cannot declare the Policy null and void where Continental relies only a Policy provision that does not properly apply to VIP's misrepresentations in the claims process.

The Court therefore DENIES Continental's motion for summary judgment and declines to enter declaratory judgment as to Counts I and II.

*ii.    Rule 56(f) Notice and Order to Show Cause*

That said, based on the Policy taken as a whole and the record presently before it, the Court concludes Continental owes no duty to defend or indemnify VIP for the Underlying Claim (*i.e.*, Count I). However, Continental does not invoke any Policy terms to renounce its duty to defend or indemnify (other than the misrepresentation bar). (*See generally* Dkt. No. 52.) Thus, before entering judgment and a judicial determination to that effect, the Court must give the parties notice of its conclusion and offer them an opportunity to respond. *See* Fed. R. Civ. P. 56(f). Indeed, "[a]fter giving notice and a reasonable time to respond, the court may: . . . (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." *Id*.

To that end, the Court identifies the following facts that are not genuinely in dispute:

- The Policy is an insurance agreement between Continental and VIP, (Dkt. Nos. 3-1 at 2, 52 at 6, 75 at 3);

- The Policy applies to liability "that the **Insured** becomes legally obligated to pay . . . as a result of a **claim** by reason of an act or omission in the rendering of **professional real estate services** by the **Insured**, or by any person for whom the Insured is legally liable," (Dkt. No. 3-1 at 4) (emphasis in original);

- The Policy also excludes any claims "based on or arising out of any actual or alleged **bodily injury** . . . [or] **property damage**," (Dkt. No. 3-1 at 11) (emphasis

in original);

- The Policy defines "**Insured**" as "**[VIP]** and any persons or entities [affiliated with VIP] while rendering **professional real estate services** on **[VIP's]** behalf," (*Id*. at 8) (emphasis in original);

- The Underlying Lawsuit alleges "bodily injuries, property damage, and other losses arising out of [the] fire at [the Apartment]," (Dkt. No. 30-2 at 3);

- VIP never provided property management services to the Apartment, (*see* Dkt. No. 53-7 at 4, 9) (VIP's responses to the Underlying Plaintiffs' interrogatories in the Underlying Lawsuit); (*see also* Dkt. No. 70 at 5) (Ms. Vuong declares in the instant case that "VIP had nothing to do with the Apartment Complex");

- VIP failed to produce a property management agreement between itself and the Apartment at the beginning of the claims process, (*see* Dkt. No. 53-6 at 3–4), and still has yet to produce one, (*see* Dkt. No. 52 at 21); and

- Even VIP's defense counsel in the Underlying Lawsuit has no recollection of whether a property management agreement exists, most likely because one never did. (*See* Dkt. No. 53-32 at 6.)

At bottom, the record reflects that (1) the Underlying Lawsuit alleges bodily injury and property damage arising out of the fire, as well as other losses resulting thereof, all of which is excluded from coverage under the Policy; and (2) VIP did not render professional real estate services for the Apartment. VIP has yet to present any material fact to dispute otherwise. As such, the Policy simply does not apply to the liability alleged in the Underlying Lawsuit. Therefore, Continental owes no duty to defend or indemnify VIP for the Underlying Claim.

To be sure, VIP's position in the instant case appears to be that it is entitled to coverage for the Underlying Claim because Ms. Vuong effectively performed real estate services on VIP's behalf for the Apartment, even if such services "were not intended or authorized to be done on behalf of VIP." (Dkt. No. 53-4 at 3.) For example, VIP notes that "the number [Ms. Vuong] used

to help her family with the Apartment is associated with VIP" and "[Ms. Vuong] apparently failed to always erase the reference to VIP in the signature block of her emails when she was assisting her family with the Apartment." (*Id.*) Even if true, the Court fails to see how such conduct constitutes professional real estate services rendered *on VIP's behalf* where both VIP *and* Ms. Vuong disavow *any* involvement between VIP and the Apartment. (*See* Dkt. Nos. 53-7 at 4, 9; 70 at 5.) And in any event, VIP fails to address the more salient fact that the Policy excludes the types of liability alleged in the Underlying Lawsuit.

Accordingly, per Rule 56(f), the Court ORDERS the parties to show cause as to why the Court should not enter judgment as to Count I and issue a judicial determination that Continental owes no duty to defend or indemnify VIP for the Underlying Claim under the Policy's terms.

3.   VIP's Intentional Misrepresentations Preclude its Extracontractual Claims

Next, the Court turns to Continental's request to enter judgment in its favor as to VIP's counterclaims. (*See* Dkt. No. 52 at 19.) As described below, the Court finds overwhelming evidence, without any genuine material dispute, that VIP intentionally misrepresented material facts when submitting the Underlying Claim to Continental. This finding is sufficient to preclude VIP's extracontractual claims irrespective of an applicable void-for-fraud clause.

i.   *Legal Standard*

"When an insured intentionally makes material misrepresentations regarding a claim for insurance coverage, any claim by the insured against the insurance company for bad faith and CPA violations must fail." *Ki Sin Kim*, 223 P.3d at 1189 (citing *Mutual Enumclaw Ins. Co. v. Cox*, 757 P.2d 499, 503–04 (Wash. 1988)). Said differently, an insured is not entitled to bring bad faith or CPA claims against the insurer where there is a factual finding that the insured attempted to defraud the insurer. *Wickswat v. Safeco Ins. Co.*, 904 P.2d 767, 774 (Wash. Ct. App. 1995). This is true even where the policy lacks a clear void-for-fraud clause. *See Ki Sin Kim*, 223 P.3d at 1191–92, 94.

The omission of facts "that a reasonable insurance company would have found important

in denying coverage" constitutes a material misrepresentation. *Onyon v. Truck Ins. Exchange*, 859 F. Supp. 1338, 1341–43 (W.D. Wash. 1994); *see also Allstate Indem. Co. v. Lindquist*, 2021 WL 5514597, slip op. at 6 (W.D. Wash. 2021) ("Untruthful affirmative statements and omissions of relevant facts can both constitute misrepresentations that are sufficient to void a policy") (citing *Onyon*, 859 F. Supp. at 1341–42). "Materiality is determined from the standpoint of the insurer, not the insured." *Ki Sin Kim*, 223 P.3d at 1188–89 (citation omitted). "A misrepresentation is material 'if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented.'" *Id*. at 1189 (citations omitted).

"[T]he insurance company must demonstrate that the insured knowingly made the untrue representations and that, in making those representations, the applicant intended to deceive the company." *Id*. (citations omitted). That said, "if an insured knowingly makes a false statement, courts will presume that the insured intended to deceive the insurance company," at which point "the burden shifts to the insured to establish an honest motive or an innocent intent." *Id*. (citations omitted). Nevertheless, "[t]he insured's bare assertion that she did not intend to deceive the insurance company is not credible evidence of good faith and, in the absence of credible evidence of good faith, the presumption warrants a finding in favor of the insurance company." *Id*. (citations omitted).

### ii.    VIP's Intentional and Material Omissions

VIP's failure to inform Continental that it was not the property manager for the Apartment was a material omission.[9] As Continental notes and as this Court has observed, whether VIP performed any professional real estate services for the Apartment is determinative of insurance coverage. *See supra* Section II.B.2.ii; (*see also* Dkt. No. 52 at 26). Here, despite Continental's repeated requests for VIP's property management agreement with the Apartment,

---

[9] Though Continental puts forth seven examples of VIP's intentional and material misrepresentations, (*see* Dkt. No. 52 at 21–26), most are either derivative of each other or otherwise overlap in their factual assertions. As such, the Court addresses only those it finds most compelling.

1  VIP conveniently neglected to inform Continental that a property management agreement did not

2  exist—let alone that it was not the property manager to begin with. (*See* Dkt. No. 53-6 at 2–3.)

3  Yet, in the *same e-mail chain*, VIP *did* manage to provide information responsive to

4  Continental's request for a general liability claim with a different insurer and that claim number.

5  (*See id*. at 2.) At minimum, VIP read Continental's e-mail requests, yet somehow omitted

6  information that was critical to its coverage claim. This omission was material. *See Cutter &*

7  *Buck, Inc. v. Genesis Ins. Co.*, 306 F. Supp. 2d 988, 1003 (W.D. Wash. 2004), *aff'd*, 144 F.

8  App'x 600 (9th Cir. 2005) ("[W]hen an insurer specifically asks information in regard to a

9  certain matter, the presumption is that the matter is material.").

10     To add fire to the flame, VIP also knew, as early as January 4, 2023, that Continental

11  believed VIP to be the property manager for the Apartment and that Continental had accepted

12  coverage on this basis. (*See* Dkt. No. 53-12 at 3) (Continental's coverage acceptance and

13  reservation of rights letter). But VIP never corrected this understanding. To the contrary, VIP

14  proceeded with the claim and began producing documents about a week later, again conveniently

15  omitting any reference to a property management agreement. (*See* Dkt. No. 53-13) (VIP's

16  response and production letter to Continental dated January 13, 2023). This omission is

17  especially concerning where, at least as early as August 30, 2022, VIP affirmed multiple times in

18  the Underlying Lawsuit that it "ha[d] no relationship with the [Apartment.]" (*see* Dkt. No. 53-7

19  at 4, 9.) In other words, VIP was capable of correcting Continental's mistaken understanding yet

20  failed to do so. The only conclusion the Court can draw is that VIP's omission was intentional.

21  And thus, irrespective of VIP's *post hoc* justification that Ms. Vuong rendered *de facto*

22  professional real estate services for the Apartment,[10] VIP knowingly omitted information

23  regarding its *legal* relationship with the Apartment (or lack thereof).

24     Similarly, and relatedly, VIP neglected to inform Continental during the claims process

25  that the Nonsuit motion was pending. On September 13, 2022, the Underlying Plaintiffs filed

26  ---

[10] Which, again, is an argument the Court finds entirely unconvincing. *See supra* Section
II.B.3.ii.

their Nonsuit motion. (Dkt. No. 53-8 at 2.) On December 30, 2022, VIP once again submitted a

tender request to Continental. (Dkt. No. 53-9 at 2.) This request lacked any mention of the

Nonsuit motion. (*See generally id.*) As noted, Continental then acknowledged receipt and

coverage for the claim on January 4, 2023. (Dkt. No. 53-12 at 4.) In so acknowledging,

Continental explicitly asked VIP for "periodic updates on the status of this matter, as well as

copies of significant correspondence, documents and court filings." (*Id.* at 5.) And once again,

though VIP managed to produce many filings from the Underlying Lawsuit on January 13, 2023,

it failed to mention the pending Nonsuit motion, (*see* Dkt. No. 53-13) (VIP's production letter

dated January 13, 2023), even though VIP acknowledged in the Underlying Lawsuit as early as

September 20, 2022, that it was no longer required to respond to discovery requests because

"VIP is pending dismissal, and thus will no longer be a party," (Dkt. No. 53-29 at 3). In other

words, VIP anticipated this fundamental change in its party status as early as September 20,

2022, yet never disclosed it to Continental. Altogether, these omissions not only obstructed

Continental's claims investigation process but in fact enabled it to continue expending resources

on a defective claim built on a false premise.

      VIP's justifications for these omissions are entirely unavailing. Regarding the lack of a

property management agreement, VIP asserts the following: "VIP never asserted that there was a

property management agreement. VIP did not indicate one existed, did not produce one, and its

answer denied it provided property management services." (Dkt. No. 75 at 12–13.)[11] But that is

precisely the problem. VIP altogether ignored Continental's repeated requests for a property

management agreement but responded to other requests. *That* is the textbook definition of a

material *omission*. *Cf. Onyon*, 859 F. Supp. at 1341–43 (where the claim involved the collapse of

a retaining wall, the insured's failure to disclose the fact that one of his employees had seen a

large piece of construction equipment run into a retaining wall weeks before it collapsed was a

material omission because the insurer's knowledge of that fact could have "alter[ed] the course

---

[11] VIP also argues that Continental's proffered evidence is inadmissible. The Court has already
resolved this issue, *see supra* Section II.A, and declines to entertain it again here.

of its investigation").

VIP further maintains that it "was not aware that Continental believed VIP was the property manager." (Dkt. No. 75 at 13.) In support, VIP cites to Mr. Leid's declaration. (*Id*.) (citing Dkt. No. 73 at 3) ("As far as I am aware, VIP . . . never made any representation to Continental that it was actually the property manager."). But again, "[t]he insured's bare assertion that she did not intend to deceive the insurance company is not credible evidence of good faith." *Ki Sin Kim*, 223 P.3d at 1189. As such, Mr. Leid's declaration is insufficient to overcome the conclusion that VIP intended to deceive Continental, and the Court need not take his bare assertions at face value. *See id*.

As for the failure to disclose the Nonsuit motion, VIP argues that it did not nullify the Underlying Plaintiffs' claims against VIP and, in any event, the Nonsuit motion did not absolve Continental of its duty to defend. (Dkt. No. 75 at 12–13.) These are red herrings. When Continental accepted tender of the Underlying Claim, it explicitly asked VIP for "periodic updates on the status of this matter, as well as copies of significant correspondence, documents and court filings." (Dkt. No. 53-12 at 5.) Here, VIP operated on the assumption that it would be dismissed from the Underlying Lawsuit long before Continental formally accepted tender, yet it never bothered to disclose this status update to Continental. Said differently, VIP did not keep Continental apprised of a material change in its status as a party, despite Continental's explicit request for status updates. Regardless of the actual legal implications of the Nonsuit motion, this was a material omission. *See Cutter & Buck*, 306 F. Supp. 2d at 1003. VIP does not dispute otherwise. Instead, once again, it merely asserts that "VIP never attempted to hide the Motion to Dismiss VIP." (Dkt. No. 75 at 13) (citing Dkt. No. 70 at 3) (Ms. Vuong's declaration). As with before, "[t]he insured's bare assertion that she did not intend to deceive the insurance company is not credible evidence of good faith." *Ki Sin Kim*, 223 P.3d at 1189.

Given these intentional and material omissions, VIP's bad faith and CPA counterclaims cannot survive. Accordingly, the Court GRANTS in part Continental's motion for summary

1    judgment and DISMISSES VIP's counterclaims with prejudice.

2                4.    Underlying Plaintiffs' Counterclaims are Dismissed Without Prejudice

3          Finally, Continental asks the Court to dismiss the Underlying Plaintiffs' counterclaims

4    with prejudice. (*See* Dkt. Nos. 52 at 5 n.2, 77 at 13 n.6.) It argues that, absent a valid settlement

5    agreement, the Underlying Plaintiffs lack standing to assert their counterclaims (which VIP

6    assigned to them). (Dkt. No. 52 at 5 n.2.) But the lack of standing is, fundamentally, a lack of

7    subject matter jurisdiction, which generally results in dismissal without prejudice. *See Hogue v.*

8    *Silver State Schools Credit Union*, 814 F. App'x 230, 233 (9th Cir. 2020) (citing *Missouri ex rel.*

9    *Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017)). Thus, to the extent the Underlying

10   Plaintiffs lack standing to assert their assigned counterclaims, their counterclaims must be

11   dismissed without prejudice.

12         In the alternative, Continental submits that the Underlying Plaintiffs' assigned

13   counterclaims are wholly dependent on VIP's claims, which it asserts fail as a matter of law, and

14   therefore the Underlying Plaintiffs' counterclaims must also fail as a matter of law and should be

15   dismissed with prejudice. (Dkt. No. 77 at 13 n. 6.) The Underlying Plaintiffs do not oppose

16   dismissal; however, they argue that dismissal should be *without* prejudice. (Dkt. No. at 15–20.)

17   The Court agrees.

18         Under Federal Rule of Civil Procedure 41(a)(2), a court may dismiss an action "at the

19   plaintiff's request . . . on terms that the court considers proper." District courts typically grant

20   voluntary dismissal under Rule 41(a)(2) "unless a defendant can show that it will suffer some

21   plain legal prejudice as a result." *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001) (citations

22   omitted). "Legal prejudice" is a term of art that means "prejudice to some legal interest, some

23   legal claim, some legal argument." *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1280 (9th Cir.

24   2023). "Uncertainty because a dispute remains unresolved is not legal prejudice." *Westlands*

25   *Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996); *see also*, *e.g.*, *Kamal*, 88 F.4th at

26   1285–86 (district court abused discretion in dismissing the plaintiff's claims with prejudice even

though the plaintiff was negligent in prosecuting the instant case and despite the defendants' argument that they would lose their "legal interest" in a *res judicata* defense); *Santa Rosa Memorial Hospital v. Kent*, 688 F. App'x 492, 493 (9th Cir. 2017) (district court did not abuse discretion in dismissing action without prejudice where the defendant merely lost the ability to assert *res judicata* in a then-pending and related state court action).

Here, Continental fails to show any legal prejudice.[12] Indeed, Continental has not demonstrated that dismissal of the Underlying Plaintiffs' counterclaims without prejudice would result in anything worse than possible future re-litigation of these purportedly assigned counterclaims. This is not legal prejudice. Accordingly, the Court GRANTS in part Continental's motion for summary judgment and DISMISSES the Underlying Plaintiffs' counterclaims *without* prejudice.

### C.    VIP's Motion to Seal (Dkt. No. 62)

Finally, VIP originally moved to seal its response (Dkt. No. 75) as well as certain exhibits attached thereto (Dkt. No. 72) pursuant to a stipulated protective order the Court entered in the instant case (Dkt. No. 55). (Dkt. No. 62 at 2–3.) Continental has since represented that it does not oppose unsealing VIP's response or the related exhibits. (Dkt. No. 80 at 2.) Accordingly, the Court DENIES the motion to seal (Dkt. No. 75) as moot.

## III.   CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

- Continental's motion for summary judgment (Dkt. No. 52) is GRANTED in part and DENIED in part;

  - The Court DENIES summary judgment as to Counts I and II. However, the Court ORDERS the parties to show cause why it should not enter judgment in favor of Continental as to Count I on the basis that the Policy does not apply to the allegations in the Underlying Claim, *see supra* Section II.B.2.ii. The

---

[12] Although the Underlying Plaintiffs did not affirmatively move to dismiss their counterclaims, the Court treats their concession effectively as a Rule 41(a)(2) request for voluntary dismissal.

parties may each submit a brief not to exceed five (5) pages of argument on this issue (excluding captions, certificates of service, and supporting declarations and exhibits) no later than ten (10) days from issuance of this order. No response brief is allowed.

- o The Court GRANTS summary judgment as to VIP's and the Underlying Plaintiffs' counterclaims. VIP's counterclaims (Dkt. No. 49 at 19–24) are DISMISSED with prejudice. The Underlying Plaintiffs' counterclaims (Dkt. No. 28 at 29–38) are DISMISSED without prejudice.

- VIP's motion to seal (Dkt. No. 62) IS DENIED as moot. The Clerk is DIRECTED to unseal Docket Numbers 72 and 75.

- Continental's motion for a protective order and to stay discovery (Dkt. No. 85) is DENIED as moot. However, the parties' stipulated motion to adjust the briefing deadlines (Dkt. No. 82) is GRANTED with respect to VIP's pending motion to compel (Dkt. No. 83). Continental's response brief is due on or before July 16, 2025. VIP's reply brief is due on or before July 23, 2025. The motion to compel (Dkt. No. 83) is noted for consideration on July 23, 2025.

DATED this 8th day of July 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE