THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, | CASE NO. C24-0917-JCC |
| Plaintiff, | ORDER |
| v. | |
| ROSALINDA HERRERA HEREDIA, *et al*. | |
| Defendants. | |

This matter comes before the Court on Defendant VIP International Real Estate Group, Inc.'s ("VIP") motion for reconsideration (Dkt. No. 96) and the parties' responses (Dkt. Nos. 90, 93) to the Court's Rule 56(f) notice and order to show cause (Dkt. No. 87 at 11–13). Having thoroughly considered the briefing and the relevant record, the Court DENIES VIP's motion for reconsideration and GRANTS judgment in favor of Plaintiff Continental Casualty Company ("Continental") on the issue of coverage for the reasons explained herein.

I.   BACKGROUND

The Court has stated the relevant facts of this case in a prior order, (*see generally* Dkt. No. 87), and will not restate them here.[1] The Court recently granted in part and denied in part

---

[1] The Court also uses the same short form terminology as used in the prior order. (*See generally id*.)

1   Continental's motion for summary judgment. (*Id*. at 19–20.) In so ruling, the Court dismissed
2   VIP's extracontractual counterclaims and ordered Continental and VIP to show cause as to why
3   the Court should not grant judgment in Continental's favor as to Count I, on the basis that the
4   Policy does not apply to the allegations in the Underlying Claim. (*Id*.) Continental and VIP have
5   each responded (Dkt. Nos. 90, 93) and VIP also moves for reconsideration of the Court's
6   summary judgment order (Dkt. No. 96).

7   **II.    VIP'S MOTION FOR RECONSIDERATION**

8       **A.    Legal Standard**

9   Motions for reconsideration are generally disfavored. LCR 7(h)(1). They should not be
10  used to ask the Court to "rethink what it had already thought through—rightly or wrongly."
11  *Wilcox v. Hamilton Constr., LLC*, 426 F. Supp. 3d 788, 791 (W.D. Wash. 2019) (cleaned up);
12  *see, e.g.*, *Brown v. Murphy*, 2023 WL 6481566, slip op. at 1 (W.D. Wash. 2023); *Hoffman v.*
13  *Transworld Sys. Inc.*, 2019 WL 109437, slip op. at 1 (W.D. Wash. 2019). Instead, motions for
14  reconsideration are appropriate where there is "manifest error in the prior ruling or a showing of
15  new facts or legal authority which could not have been brought to [the Court's] attention earlier
16  with reasonable diligence." *Id*. "Manifest error" is "an error that is plain and indisputable, and
17  that amounts to a complete disregard of the controlling law or the credible evidence in the
18  record." *Munoz v. Locke*, 2013 WL 12177035, slip op. at 2 (W.D. Wash. 2013) (internal citation
19  and quotation omitted). As such, motions for reconsideration must "point out with specificity the
20  matters which the movant believes were overlooked or misapprehended by the [C]ourt, any new
21  matters being brought to the [C]ourt's attention for the first time, and the particular modifications
22  being sought in the [C]ourt's prior ruling." LCR 7(h)(2).

23      **B.    Analysis**

24  In its motion, VIP raises a host of issues with the Court's summary judgment order. It
25  argues that these issues each rise to the level of manifest error, such that Court should deny
26  Continental's motion for summary judgment in its entirety. (Dkt. No. 96 at 2, 9.) But VIP's

purported errors are nothing more than attempts to relitigate the issues, misinterpretations of the law, the facts, and the Court's rulings, or pure semantical disputes. Nevertheless, in an effort to be thorough, the Court addresses each of VIP's concerns.

       1.    Application of *Sandoval*

VIP argues that the Court manifestly erred in relying on *Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021), when it denied VIP's request to strike on hearsay grounds certain portions of Continental's arguments and evidence cited thereto. (Dkt. No. 96 at 6.) According to VIP, *Sandoval* only protects possible hearsay evidence submitted by the non-moving party, not hearsay evidence submitted by the moving party. (*See id*.) As VIP would have it, because Continental is the moving party, and because VIP objects to Continental's evidence on hearsay grounds, *Sandoval* simply does not apply. (*See id*.) Even though VIP accurately captures the posture in *Sandoval*, it misconstrues the law. Indeed, the Ninth Circuit stated a clear rule: "If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." *Sandoval*, 985 F.3d at 666. There is no requirement that the objected-to evidence must have been submitted by the non-moving party. *See*, *e.g.*, *Olympic Air, Inc. v. Helicopter Tech. Co.*, 2022 WL 6162104, slip op. at 2 (W.D. Wash. 2022) (relying on *Sandoval* to conclude that moving party's evidentiary submissions could conceivably be admissible at trial and therefore the court could consider such evidence at the summary judgment stage). As such, VIP fails to demonstrate that the Court manifestly erred in denying its request to strike portions of Continental's briefing.

       2.    The "Finding"

Next, VIP challenges the Court's finding that "'VIP omitted critical information during the negotiations [with Underlying Plaintiffs]—information that would have prevented the Underlying Plaintiffs from agreeing to the settlement to begin with.'" (Dkt. No. 96 at 2) (quoting

1  Dkt. No. 87 at 4). It argues that the evidence to which the Court cites does not support this
2  finding. But this is not a "finding" the Court had to make; rather, it is a factual assertion.[2] To be
3  abundantly clear, counsel for the Underlying Plaintiffs submitted evidence of a declaration it
4  made in the Underlying Lawsuit, which stated the following: "Had I and my clients known the
5  truth about [VIP's counsel's] behavior [such as failing to respond to Continental's request for a
6  property management agreement], I would never have entered into the settlement agreement and
7  I would not have recommended that my clients enter into in [sic] the settlement agreement."
8  (Dkt. No. 61-1 at 7.) Thus, VIP's insistence that the evidence "does not state this," (Dkt. No. 96
9  at 6), is simply incorrect.

    3.  Duty to Disclose & Presumption of Materiality

  VIP also argues that the Court erred in finding that VIP committed material omissions. (Dkt. No. 96 at 7–8.) It counters that it did not "omit" any information to begin with because it had no duty to disclose that information. (*Id.*) And, says VIP, even if it did, and therefore made omissions, they were not material. (*Id.* at 7.) VIP ostensibly asks the Court to "rethink what it had already thought through—rightly or wrongly." *Wilcox*, 426 F. Supp. at 791 (cleaned up). But this is not the standard on a motion for reconsideration. As such, VIP fails to demonstrate that the Court committed manifest error.

  First, VIP asserts that it had no duty to disclose information to Continental because Continental breached its duty to defend. (Dkt. Nos. 96 at 7–8, 75 at 13.) In so arguing, it relies on this Court's prior case, *Rushforth Const. Co., Inc. v. Wesco Ins. Co.*, 2018 WL 1610222, slip op. at 3 (W.D. Wash. 2018). But the case at bar differs materially from *Rushforth*. For one, *Rushforth* did not involve allegations of the insured's failure to disclose information. *See generally id.* To the contrary, the insured in *Rushforth* immediately responded to the insurer's information requests upon the insurer's acknowledgement of tender. *See id.*, slip op. at 1. Whereas, one of the key material omissions in the case at bar is that VIP neglected to disclose

---

[2] And, frankly, one that ultimately had no bearing on the Court's rulings.

ORDER
C24-0917-JCC
PAGE - 4

1  material information in response to Continental's requests, which Continental made immediately
2  after acknowledging the claim but before accepting tender. Indeed, as the Court noted,
3  Continental acknowledged receipt ten days after VIP tendered the claim. (Dkt. No. 87 at 3.) In so
4  acknowledging, Continental asked VIP for a copy of the underlying complaint. (*Id*.) After a
5  month of no response from VIP, Continental reached out again to ask VIP for a copy of the
6  complaint "and any other substantive documents" to determine coverage. (*Id*.) This time, VIP
7  provided the complaint and nothing more. (*Id*.) That same day, Continental explicitly asked for a
8  copy of the property management agreement, again to no avail. (*Id*.) Thus, even if Continental
9  breached its duty to defend, thereby possibly releasing VIP of its duty to disclose, VIP
10 nevertheless committed at least one material omission *prior to* Continental's alleged breach.

11      VIP further maintains that the Court improperly relied on the presumption of materiality
12 because Continental failed to provide a declaration regarding the materiality of the omissions.
13 (Dkt. No. 96 at 7.) But requiring a declaration would negate the purpose of a presumption.
14 Instead, a party triggers the presumption by demonstrating that it "specifically ask[ed] [for]
15 information in regard to a certain matter," as the Court found that Continental did here. (Dkt. No.
16 87 at 15) (quoting *Cutter & Buck, Inc. v. Genesis Ins. Co.*, 306 F. Supp. 2d 988, 1003 (W.D.
17 Wash. 2004), *aff'd*, 144 F. App'x 600 (9th Cir. 2005)).

18      VIP then argues that the Court overlooked its attempt to rebut the presumption vis-à-vis
19 its Rule 56(d) request to deny summary judgment pending evidence from its expert that the
20 alleged misrepresentations are not material to a reasonable insurer. (Dkt. No. 87 at 15) (citing
21 Dkt. No. 75 at 27). However, as the Court noted, "[a] misrepresentation is material 'if a
22 reasonable insurance company, in determining its course of action, would attach importance to
23 the fact misrepresented.'" *Ki Sin Kim v. Allstate, Ins. Co., Inc.*, 223 P.3d 1180, 1189 (Wash. Ct.
24 App. 2009) (citations omitted). To that end, "[w]hile materiality is generally a mixed question of
25 law and fact, [a court] may decide the issue as a matter of law 'if reasonable minds could not
26 differ on the question.'" *Id*. at 1188 (cleaned up). Said differently, a court can decide materiality

as a matter of law even absent the presumption. Here, the Court found that reasonable minds would not differ as to the materiality of VIP's omissions, particularly its failure to produce a property management agreement. (*See* Dkt. No. 87 at 16–17.) Indeed, it seems almost a foregone conclusion that a reasonable insurance company issuing a real estate professionals' errors and omissions policy would attach importance to the existence (or lack thereof) of its insured's property management agreement with the property at issue. *See Ki Sin Kim*, 223 P.3d at 1189. Continental therefore demonstrated materiality both in its entitlement to the presumption and as a general matter of law.

At bottom, VIP fails to show that the Court committed any error in its findings of material omissions, let alone manifest error.

    4.    Third-Party "Interests"

VIP further submits that the Court erred in dismissing its extracontractual claims without considering third-party interests. (Dkt. No. 96 at 8) (citing Dkt. No. 75 at 23). But VIP's concern over third-party interests is inapplicable to the case at bar. For one, the Policy, like many, does not provide third-party coverage. *Cf. Angarita v. Allstate Indem. Co.*, 2014 WL 3360175, slip op. at 5 (Wash. Ct. App. 2014) (explaining third-party coverage in the context of automobile coverage); *Tudor Ins. Co. v. Hellickson Real Estate*, 493 F. App'x 895, 897–98 (9th Cir. 2012) (concluding that a life insurance policy is different from a real estate professionals' errors and omissions liability policy because the former involves a third-party beneficiary but the latter does not); *Schmidt v. American Commerce Ins. Co.*, 2018 WL 1111064, slip op. at 10 (Wash. Ct. App. 2018) (describing how a third-party beneficiary interest arose in the context of an insured homeowner demanding payment on behalf of a loss payee, his mortgagee bank). Thus, contrary to VIP's representations, the other interested parties in this case (*i.e.*, the Underlying Plaintiffs and other insurers seemingly involved in the settlement) are not third-party beneficiaries as that term is understood in the insurance context.

To that end, VIP misinterprets the cases on which it relies. Indeed, VIP cites *Cox v.*

*Continental Cas. Co.*, 2014 WL 6632371, slip op. at 5 (W.D. Wash. 2014), for the proposition that "[n]ot all misrepresentations preclude extracontractual claims, particularly when third-party interests are affected." (Dkt. No. 75 at 23.) But that is not the holding in *Cox*. To the contrary, the *Cox* court acknowledged that "the first-party/third-party distinction is not wholly borne out by the cases" but noted that it "need not reach this issue of Washington law" given the facts of the case. Thus, the *Cox* court did not reach the question of how third-party interests affect an insured's ability to preclude an insurer's extracontractual claims based on the insurer's misrepresentations. VIP also cites *Tudor* for the same proposition. (Dkt. Nos. 96 at 8, 75 at 23.) But once again, *Tudor*'s holding has no bearing on third-party interests. *See* 493 F. App'x at 897–98. And importantly, in *Tudor*, the Ninth Circuit Court of Appeals affirmed the lower court's decision to consider the insurer's fraud allegations before addressing the insured's counterclaims. *See id.* at 897.

Accordingly, the Court did not manifestly err in declining to consider third-party interests before dismissing VIP's extracontractual counterclaims.

### 5. Discovery Responses are Not "Filings"

VIP also objects to the Court's characterization of discovery responses as "filings." (Dkt. No. 96 at 9.) The Court concedes that discovery responses are not "filings" as that term of art is understood in the legal profession. Nevertheless, this mischaracterization in no way constitutes manifest error. Indeed, the Court's finding remains the same: VIP managed to produce plenty of other documents in response to Continental's request for information, yet it failed to provide a property management agreement or a copy of the Nonsuit motion. (*See* Dkt. No. 87 at 16.) This remains a material omission, regardless of whether the documents VIP produced were or were not filings. (*See id*.) In turn, this supposed "error" is little more than a semantical hiccup.

### 6. Dismissal of Counterclaims

Finally, VIP argues that the Court erred to the extent it dismissed all of VIP's counterclaims, not just its extracontractual counterclaims. (Dkt. No. 96 at 9.) Indeed, under

Washington law, VIP's material misrepresentations only preclude its extracontractual counterclaims, not its breach of contract one. (*See* Dkt. No. 87 at 13–14) (explaining how an insured's material misrepresentations preclude its *extracontractual* counterclaims). Although the Court did not intend to dismiss all of VIP's counterclaims, it agrees that its order's language is ambiguous. Therefore, to the extent it is unclear, the Court clarifies its rulings and dismisses only VIP's extracontractual counterclaims (first, second, and fourth counterclaims). VIP's breach of contract claim (third counterclaim) survives.

### III. ORDER TO SHOW CAUSE & RULE 56(f) JUDGMENT

#### A. Legal Standard

In rare circumstances, a district court may issue summary judgment *sua sponte*. *See* Fed. R. Civ. P. 56(f). Indeed, a court may "grant [summary judgment] on grounds not raised by a party" or "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(2), (3). However, before doing so, a court must notify the parties of its intent to issue summary judgment *sua sponte* and provide them with a reasonable time to respond. *See* Fed. R. Civ. P. 56(f). The Court has provided such notice, (*see* Dkt. No. 87 at 11–13), and now finds summary judgment on the issue of coverage warranted under Rule 56(f).

The interpretation of the insurance policy and its terms is a legal question. *McDonald v. State Farm Fire and Cas. Co.*, 837 P.2d 1000, 1003 (Wash. 1992). A court must give a contract the plain meaning supplied by its express terms if the terms are unambiguous. *Davis v. N. Am. Accident Ins. Co.*, 254 P.2d 722, 726 (Wash. 1953). Thus, when interpreting insurance contracts, courts "construe insurance policies as a whole, giving each clause force and effect." *Ki Sin Kim*, 223 P.3d at 1188 (citations omitted). Similarly, courts "give the terms of a policy the 'fair, reasonable, and sensible construction' that the average person purchasing insurance would give the contract." *Id*. (citation omitted). Any ambiguities in an insurance policy are construed against the insurer. *Id*. "To find a clause ambiguous and thus construe the ambiguity against the drafter,

the Court must conclude that the clause is fairly susceptible to two different interpretations, both of which are reasonable." *Kleinsasser v. Progressive Direct Ins. Co.*, 2021 WL 1720951, slip op. at 4 (W.D. Wash. 2021) (cleaned up).

### B. Analysis

#### 1. The Policy Does Not Apply to the Alleged Injuries

Here, the Policy language is unambiguous: it simply does not apply to the injuries alleged in the Underlying Lawsuit. The Policy applies to liability "that the **Insured** becomes legally obligated to pay . . . as a result of a **claim** by reason of an act or omission in the rendering of **professional real estate services** by the **Insured**, or by any person for whom the Insured is legally liable." (Dkt. No. 3-1 at 4) (emphasis in original). This includes a "demand alleging personal injury." (*Id*. at 7.) However, the Policy explicitly excludes "bodily injury"[3] from its definition of "personal injury." (*Id*. at 9, 11.) Instead, the Policy only covers specific types of personal injury, including, importantly here, "wrongful entry into, wrongful eviction from, or invasion of the right of private occupancy of a room, dwelling, or premises." (*Id*. at 9.) The Policy also excludes coverage for "property damage,"[4] unless the damage arises out of a "**lock box claim**" or "**open house claim**." (*Id*. at 11) (emphasis in original).

As the Court noted, the Underlying Lawsuit alleges "bodily injuries, property damage, and other losses arising out of [the] fire at [the Apartment]." (Dkt. No. 30-2 at 3.) The Underlying Lawsuit therefore alleges liability that is excluded under the Policy. However, VIP argues that the Court has mischaracterized the alleged injuries. (*See* Dkt. No. 90 at 4.) As VIP

---

[3] The Policy defines "bodily injury" as "bodily injury, sickness or disease and death and includes mental injury, mental anguish, mental tension, emotional distress, pain, suffering or shock sustained by any person, whether or not resulting from injury to the body." (*Id*. at 7.)

[4] The Policy defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use or theft of tangible property that is not physically damaged." (*Id*. at 10.)

frames it:

> The Underlying Plaintiffs allege "serious" and "permanent and painful injuries, personal damage and disability, emotional trauma, loss of enjoyment of life, emotional distress", "medical treatments", "out of pocket expenses", "harms, losses, and damages", damages from "<u>eviction and/or displacement</u>, [sic] costs" and a right to "<u>[relocation] assistance</u>, damages and reasonable attorneys' fees."

(*Id*.) (emphasis in original) (quoting Dkt. No. 30-2 at 11–12). But VIP's characterization still falls squarely within the definition of excludable bodily injury. (*See* Dkt. No. 3-1 at 7, 10.)

That said, VIP points to at least one allegation that may equate to a coverable form of personal injury. (*See* Dkt. No. 90 at 4) (citing Dkt. No. 30-2 at 9–12). Indeed, VIP highlights the following allegation as an example of wrongful eviction: "[s]oon after the fire, the defendants immediately and diligently took steps to look out for the defendants' own interests by perfecting the eviction of the plaintiffs from the uninhabitable building, but the defendants failed to offer any relocation assistance to the plaintiffs." (Dkt. No. 30-2 at 9.) This allegation is conclusory at best; it fails to describe what "steps" the Underlying Defendants took to evict the Underlying Plaintiffs or otherwise carry out an eviction. As such, the Court is hesitant to treat it as a coverable allegation. More importantly, the allegation mischaracterizes a failure to cover relocation costs after the fire as an eviction. (*See id*.; *see also id*. at 13) ("As a result of defendants' failure or refusal to provide relocation assistance, the plaintiffs suffered damages as a result of the eviction and/or displacement"). That the Underlying Defendants failed to cover relocation costs after the fire burned the Underlying Plaintiffs' residences, while concerning, is more analogous to property damage in the form of loss of use—which the Policy excludes—than it is to a wrongful eviction. *Cf. Kitsap County v. Allstate Ins. Co.*, 964 P.2d 1173, 1180, 1183–86 (Wash. 1998) (on a request for certification and where Policy did not define wrongful entry, wrongful eviction, or invasion of the right of private occupancy, the Washington Supreme Court concluded that claims for trespass, nuisance, and interference were analogous to claims of

ORDER
C24-0917-JCC
PAGE - 10

1 | wrongful entry and invasion of the right of private occupancy but not wrongful eviction).

2 |         2.    <u>Ms. Vuong Did Not Act on Behalf of VIP</u>

Even if the Underlying Plaintiffs' alleged injuries were coverable, the Policy still would not apply to the Underlying Claim because Ms. Vuong never provided property management services to the Apartment "on behalf of" VIP. (*See* Dkt. No. 87 at 11–12.) Of course, VIP vehemently opposes this conclusion. It contends that the Underlying Plaintiffs assert theories of apparent agency and alter ego as potential theories of liability, such that Ms. Vuong could have been acting "on behalf of" VIP. (Dkt. No. 90 at 4.) But this argument ignores the plain language of the Policy and the undisputed evidence.

The Policy defines an "Insured" as "**[VIP]** and any persons or entities [affiliated with VIP] while rendering **professional real estate services** on **[VIP's]** behalf." (Dkt. No. 3-1 at 8) (emphasis in original). "On behalf of" has the following meanings in common parlance: "in the interest of"; "as a representative of"; "as the agent of"; "on the part of"; "for the benefit of." *Behalf*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/on%20behalf%20of#citations (last visited July 29, 2025); *Behalf*, AHDICTIONARY.COM, https://ahdictionary.com/word/search.html?q=behalf (last visited July 29, 2025).

There is no evidence in the record to suggest that VIP ever provided property management services to the Apartment. (*See* Dkt. Nos. 53-7 at 4, 9, 70 at 5.) Perhaps this is why VIP never produced a copy of a property management agreement between itself and the Apartment. (*See* Dkt. Nos. 52 at 21, 53-6 at 3–4.) Put simply, Ms. Vuong could not have rendered professional real estate services for the Apartment on the part of, for the benefit of, or in the interest of VIP when VIP never had a professional real estate relationship with the Apartment to begin with. Whatever professional real estate services Ms. Vuong did provide for the Apartment, it was *not* to VIP's benefit or in its interest. Even Judge Lee concluded as a matter of law that "VIP had an absolute defense to any liability and was never a proper party,

because it had nothing to do with the Apartment Complex." (Dkt. No. 39-1 at 18.)[5] Thus, for the Court to give merit now to VIP's arguments regarding apparent agency and alter ego liability would not only defy the plain language of the Policy, but also contravene fundamental principles of judicial comity.

### 3. Summary

The plain language of the Policy and the record before the Court demonstrate that the Policy does not cover the Underlying Claim. As such, Continental does not owe VIP a duty to defend or indemnify. *See Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 691 (Wash. 2013) (the "duty to defend . . . is not triggered by claims that clearly fall outside the policy").

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES VIP's motion for reconsideration (Dkt. No. 96) but clarifies that only VIP's extracontractual counterclaims are dismissed, and GRANTS Rule 56(f) judgment to Continental as to Count I of its complaint (Dkt. No. 3).

DATED this 30th day of July 2025.

*[signature]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[5] The Court previously took judicial notice of Judge Lee's factual findings and conclusions of law. (Dkt. No. 48 at 6.)